**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| JERRY LEE SIERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:14CV2031-PPS |
| | ) | |
| MIKE DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

While Officers Mike Davis and Shawn McGuire were executing an arrest warrant

on plaintiff Jerry Lee Siers, McGuire's K-9 partner attacked Siers, causing him severe

injuries. Siers has settled his claim against Officer McGuire. What remains is his failure

to intervene claim brought against the bystander officer, Mike Davis. Davis now seeks

summary judgment on the grounds that he is protected by qualified immunity. I agree,

and therefore will grant Davis' motion.

## Background

At the time of the events in question, Jerry Lee Siers was supposed to face trial

for multiple counts of child molestation and other charges. [DE 63-5 at 1.] On the

morning of his criminal trial, Siers failed to appear. [DE 63-1 at 1.] The trial proceeded

without him, and Siers was convicted on all charges. [Siers Dep. at 110, DE 63-2; DE 63-1

at 1.] An arrest warrant was also issued for Siers. Officer Mike Davis, a Detective

Sergeant with the Wabash County Sheriff's Department, was the lead investigator in the

criminal case against Siers. It was his responsibility to find Siers and apprehend him

pursuant to the arrest warrant. [DE 63-1 at 1; DE 63-3 at 3-4.]

Davis received a tip that Siers was at the Marion City Public Library. The City of Marion is in another county so the library is located outside of Davis' jurisdiction. As a result, Davis enlisted the assistance of Officer Shawn McGuire, who worked for the Marion Police Department. McGuire works with a K-9 partner named Geronimo, and McGuire brought the dog along to apprehend Siers. [DE 63-3 at 3.] The two officers went to the library, where Siers was in the parking lot smoking a cigarette. [Siers Dep. at 44-45, DE 63-2.] Upon spotting Siers, the officers "screeched to a stop," and McGuire got out of the police car. Siers claims that he complied with McGuire's orders to stop, raise his hands, turn around, and get on the ground. [Siers Dep. at 46-47, 75-76, DE 63-2.] According to Siers, when McGuire got out of the car he was "frantic" and it seemed like he was moving at "100 mile[s] per hour." [Siers Dep. at 60, DE 63-2.] Siers described McGuire as "fidgety" and that McGuire's "adrenaline was running." [Siers Dep. at 75, DE 63-2.] Siers says that it took McGuire "seconds" to get the dog out of the car. [Siers Dep. at 66, DE 63-2.]

According to Siers, as he was getting on the ground as instructed, he was attacked by the K-9, which bit, tore, and dragged him. [Siers Dep. at 47-48, DE 63-2.] McGuire admits that the "K-9 was deployed to apprehend the plaintiff," [DE 66-2 at 2], though Davis disputes that Siers was following McGuire's commands to surrender [DE 63-3 at 3]. While McGuire was directing Siers to stop, Davis was getting out of the police car and coming up from around the other side of a tree. [Siers Dep. at 59, DE 63-

2.] Less than 30 seconds passed from the time the officers arrived until the dog had engaged Siers' leg. [Siers Dep. at 74, DE 63-2.]

During the attack, Siers cried out for help. [Siers Dep. at 82-83, DE 63-2.] Siers attempted to put his hands behind his head while he was being bitten by the K-9. [Siers Dep. at 84-85, DE 63-2.] After he had put his hands behind his head, Siers heard McGuire yell at the K-9 in German, which Siers believes was a command to get the dog to disengage from his leg [*see* Siers Dep. at 85-86, DE 63-2], but when the dog did not respond, McGuire physically tried to pull the dog off of Siers. [Siers Dep. at 63, 85, DE 63-2.] Some of Siers' injuries may have actually been the result of McGuire's attempts to pull the K-9 off of him. [Siers Dep. at 86, DE 63-2.] Siers says in his affidavit that the dog attack lasted about two minutes. [DE 66-1 at 1.] The entire episode lasted less than three minutes. [Siers Dep. at 84, DE 63-2.] As a result of the attack, Siers suffered grievous injuries. The damage to his right testicle was so severe that it had to be surgically removed, and he suffered injuries to his scrotum and right inner thigh. [Siers Dep. at 105, DE 63-2.]

Siers' account of whether Davis witnessed the K-9 attack has shifted. Initially, Siers testified that, during the attack, he "didn't actually see [Davis]." [Siers Dep. at 68, DE 63-2.] He then testified that Davis was moving over to his left in Siers' peripheral vision and "was ... right there." [Siers Dep. at 68, 77, DE 63-2.] Later, in his affidavit, Siers stated that Davis had the opportunity to intervene to stop the attack [DE 66-1 at 2],which suggests to me that Siers is saying Davis saw the attack. Davis himself

acknowledged that he was standing a number of feet away.  [DE 63-3 at 3.]  It is

undisputed that, during the attack, Davis did not try to intervene. [Siers Dep. at 69, DE

63-2; DE 63-6 at 2-3.]

According to Davis, Geronimo was not his dog nor did it belong to his agency,

the Wabash County Sheriff's Department. Rather, it belonged to a city in another

county. Davis testified that he was completely unaware of how to handle the K-9 unit.

He had no control over the dog, no specialized training with police dogs in general and

Geronimo in particular, and that he never owned his own police dog.  [DE 63-3 at 4.]

From Davis' perspective, the K-9 was McGuire's partner, McGuire brought the dog to

the arrest and was responsible for the dog, and McGuire gave instructions to the dog in

German.  McGuire was making efforts to get the dog to submit to his commands during

the attack.  [DE 63-6 at 3.]  In sum, Davis was completely unaware of the commands

that were necessary to get the dog to submit, and there is no evidence that Geronimo

would have taken any orders from Davis even if he had tried to do so.  [DE 64 at 9-10.]

**Analysis**

Summary judgment is proper if "there is no genuine dispute as to any material

fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A

genuine dispute about a material fact exists only "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In making this determination, the Court construes

"all facts and reasonable inferences from the record in the light most favorable to [ ] the

non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005). As the Seventh Circuit has held, "[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997).

As noted above, Siers has settled his claim against Officer McGuire, the officer who released the dog on him. What remains is his § 1983 failure to intervene claim against Detective Davis. Davis has moved for summary judgment on Siers' failure to intervene claim, claiming that he had no realistic opportunity to prevent the harm that Siers suffered. He also asserts that he is entitled to qualified immunity. Because the issue of qualified immunity disposes of the claims, I will limit my discussion to that issue.

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

"Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal citation omitted).

Qualified immunity has two requirements: (1) the facts that a plaintiff has alleged must make out a violation of a constitutional right; and (2) the right at issue must have been "clearly established" at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is "clearly established" if "the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "While a case directly on point is not required, existing precedent must have placed the statutory or constitutional question beyond debate." *Humphries v. Milwaukee Cty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (internal citation and quotation marks omitted).

It is of course clearly established that use of excessive force violates the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). And it's also clearly established that the use of a police dog on a nonresisting suspect constitutes excessive force. *Becker v. Elfreich*, 821 F.3d 920, 928-29 (7th Cir. 2016). Thus, if Siers' version of the facts is believed and McGuire released the K-9 on Siers after he had already surrendered, McGuire would have violated a clearly established right and would not be

entitled to qualified immunity. But this case is no longer against McGuire. This is a case against the other officer (Davis) for failing to prevent the harm done by the offending officer (McGuire).

Of course, generally speaking, it is a clearly established constitutional violation for an officer to fail to intervene when the officer knows a constitutional violation is taking place. *See Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). But the Supreme Court has cautioned that, in defining the constitutional right at issue, a generalized inquiry does not suffice. Rather, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense." *Id.* at 202. The relevant inquiry is whether it would have been clear to a reasonable officer that his conduct was unlawful in the situation *as he confronted it. Id.* The "unlawfulness must be apparent." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). This requires defining the appropriate level of specificity before the court can determine if it was clearly established. *Wilson v. Layne*, 526 U.S. 603, 615 (1999).

Here, the relevant context is that another officer made a decision – one that rested solely with him – to deploy his K-9 partner on an already surrendered suspect. That officer brought the K-9 to the arrest and gave commands to the K-9 in another language. Although he deployed the dog to apprehend Siers, he also ordered the K-9 to disengage the suspect. When the K-9 did not obey those commands, the officer pulled the K-9 off of the suspect likely causing additional damage to the suspect. Officer Davis, standing by watching this encounter, had no training or experience to enable

him to handle the K-9, and he therefore did nothing in this situation. Only after taking into account this specific context can I ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *See id.*

The answer to this question must be no. A reasonable officer could believe that doing nothing when confronted with this particular set of circumstances was the appropriate course of action. This is not a run-of-the-mill failure-to-intervene case in which a fellow officer used excessive force on a suspect and the other officers stood by doing nothing, thus allowing excessive force to be used. This particular situation presents a unique set of facts and circumstances, which is itself an important indication that Davis' conduct did not violate a clearly established right. *See White*, 137 S. Ct. at 552.

Based on the evidence before me, it would be unreasonable to believe that Davis had a realistic opportunity to prevent McGuire from releasing the dog which he did very quickly according to Siers. Recall that Siers testified that McGuire was "frantic" and moving at "one hundred miles per hour" when he exited the car. The decision to release the K-9 rested solely with McGuire, who was in charge of the K-9. It was McGuire and the K-9 that Siers saw, and McGuire was the one ordering Siers to freeze. Based on Siers' own testimony, Davis was either still inside or just starting to exit the police car when McGuire released the dog, and the release happened very quickly. Then, once Siers followed McGuire's orders to put his hands behind his head, McGuire actually tried to get the dog to submit. At that point, it is arguable whether a

constitutional violation was even taking place any longer. This is because no one

disputes that McGuire was actually attempting to end the attack. McGuire was having

difficulty getting Geronimo under control, but Davis had no knowledge of the K-9

commands. What's more, he didn't speak German, the language the dog responded to.

Davis reasonably thought that if he did anything, including shouting or assisting

McGuire in pulling the K-9 off of Siers' leg, he only would have exacerbated the

injuries.  He may have even put himself in harm's way.

Who knows whether assisting McGuire in trying to pry the dog off of Siers

would have shortened his agony or provoked the dog further and thereby prolonged it.

Perhaps with the benefit of hindsight, Davis should have made a different choice and

tried to assist McGuire in pulling the dog off.  But qualified immunity protects

reasonable though mistaken judgments, and Davis' actions in this situation strike me as

entirely reasonable and probably not even mistaken.  This is precisely the kind of

"breathing room" qualified immunity calls for.

To be sure, I am not attempting to define the facts presented in this case so

specifically as to require Siers to show that the very action in question has previously

been held unlawful.  To do so would make it impossible for officers to be held liable for

their unconstitutional actions.  "Even where there are 'notable factual distinctions,'

prior cases may give an officer reasonable warning that his conduct is unlawful."

*Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 528 (7th Cir. 2012).  Thus, it's really besides the

point that the use of force was a K-9 attack.  Any use of a weapon or force that requires

training and specialized knowledge could be substituted in our fact pattern. Siers is still

unable to point to any case that would have given Davis reasonable warning that doing

nothing in such a situation was unlawful. And indeed I have located one case to the

contrary. Judge Pratt in the Southern District has held that, as a matter of law, an

untrained officer who witnessed a K-9 attack, one in which he did not deploy the K-9,

could not be held liable under a failure to intervene claim despite having done nothing

in that situation. *Pastore v. Dixon*, 2016 WL 7492479, at *7 (S.D. Ind. Dec. 30, 2016).

Whether that decision is a correct statement of the law is not the point. I raise it only to

show that reasonable minds might disagree on this issue, and that only serves to

underscore the qualified immunity point.

Simply put, it is not clear that a reasonable officer in this situation would have

recognized that doing nothing was unlawful. Thus, Davis did not violate clearly

established law, and he is entitled to qualified immunity on the failure to intervene

claim.

### Conclusion

Defendant Mike Davis' Motion for Summary Judgment [DE 63] is **GRANTED**.

The Clerk should enter judgment in favor of Mike Davis and against Jerry Lee Siers

accordingly.

Defendant Mike Davis' Rule 56 Motion to Strike [DE 70] is **DENIED AS MOOT**.

**SO ORDERED.**

ENTERED: February 15, 2018

s/    Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT